# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **Case No.: 23-cr-76 (CRC)** |
| | : | |
| v. | : | **18 U.S.C. § 1752(a)(2)** |
| | : | |
| BRANDON KELLY DILLARD, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Brandon Kelly Dillard, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1.     The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.     On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3.      On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after

2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.     Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.     Defendant Brandon Kelly Dillard, who lives in Las Vegas, Nevada, flew from Las Vegas to Dulles International Airport in Northern Virginia on January 5, 2021.  On the evening of January 5, 2021, Dillard appeared in videos near the National Mall in Washington, D.C., where he confronted lines of officers, pointing at them and encouraged the crowd to advance toward the police line by shouting "forward!"

9.    On January 6, 2021, after attending the former President's rally, Dillard made his way onto the Capitol grounds, which was a restricted area, and participated in the riot at the United States Capitol building.

10.    Around 4:16 p.m., after entering the restricted area, Dillard, wearing a distinctive "Supreme" spider web-patterned hooded sweatshirt, black "Supreme" knit hat, and a black paisley print neck gaiter, scaled down the Capitol's exterior wall from the Upper West Terrace area of the U.S. Capitol to the window frame of a Senate conference room, Senate Terrace Mezzanine Room 2 ("Room ST-2M").  Room ST-2M is immediately to the north of a tunnel entrance to the U.S. Capitol building, known as the "Lower West Tunnel."

11.    Once Dillard climbed down to the bottom ledge of the window frame of Room ST-2M, he crouched down and looked into a portion of the window that had been smashed in, shattered, and hollowed out by other rioters.   Then, he climbed through the hollowed-out window and unlawfully entered the U.S. Capitol building.  Dillard was one of the first individuals to enter Room ST-2M of the Capitol building.

12.    About 30 seconds later, Dillard crawled back out of the window and back onto the staging area that was set up for the presidential inauguration.  Once outside, Dillard pulled down his face mask, exposing most of his face.

13.    At the time Dillard arrived on the window frame of Room ST-2M, during his presence inside Room ST-2M, and while he remained on the staging area, he was just feet away from the entrance of the Lower West Tunnel, where a prolonged, violent attack by rioters against police was underway.  During that attack, rioters damaged nearby rooms of the building, such as Room ST-2M, and retrieved items from those rooms, including furniture and doors, which they

used to physically assault the law enforcement officers that were protecting the Tunnel. Dillard was in the immediate vicinity of this violence and observed it as it was happening.

14.     At approximately 4:28 p.m., MPD Officer B.M., who was at the front of a line of uniformed officers defending the Tunnel, was dragged into the crowd by rioters and assaulted. Certain individuals in the crowd attempted to protect Officer B.M. from further assault. At or near that time, Dillard was nearby. Dillard repeatedly grabbed Officer B.M.'s helmet, making physical contact with Officer B.M. in an attempt to remove Officer B.M.'s helmet.

15.     Dillard remained near the inaugural stage area of the Lower West Terrace until at least 5:05 p.m. as the rioters continued overwhelming officers and attempting entry into the Capitol Building.

### *Elements of the Offense*

16.     The parties agree that 18 U.S.C. § 1752(a)(2) requires the following elements:

a.  First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

b.  Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

c.  Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

### *Defendant's Acknowledgments*

17.     The defendant did unlawfully and knowingly, and with the intent to impede or disrupt the orderly conduct of Government business, engage in disorderly or disruptive conduct in, or within such proximity to, the United States Capitol and its grounds, where the Vice President

was and would be temporarily visiting, without lawful authority to do so, and where such conduct

impeded and disrupted the orderly conduct of Government business.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Samantha R. Miller*
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20530
Samantha.Miller@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Brandon Kelly Dillard, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: _11 - 2 - 23_                    _____

**Brandon Kelly Dillard**
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: _____                    _____

**Yi Lin Zheng**
Attorney for Defendant